IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIMBERLY OSBORNE,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | **No. 13-04400** |
| v. | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Acting Commissioner of Social Security,** | : | |
| **Defendant** | : | |

**REPORT AND RECOMMENDATION**

**TIMOTHY R. RICE**
**U.S. MAGISTRATE JUDGE**                                                                           October 8, 2014

BACKGROUND

Plaintiff Kimberly Osborne alleges the Administrative Law Judge ("ALJ") erred in denying her application for Supplemental Security Income ("SSI") by: (1) failing to obtain and assess the records that support a prior finding of disability; (2) inadequately explaining his finding that Osborne has no exertional impairment and no environmental impairment; (3) not adequately explaining his assessment of Osborne's residual function capacity ("RFC")[1]; and (4) improperly rejecting Osborne's mother's testimony.

After careful review, I find the ALJ's decision should be remanded because he failed to review a West Virginia ALJ's prior decision, which was relevant here. I respectfully recommend that Osborne's request for review be granted and the case remanded to consider the prior ALJ's decision.

---

[1]     A claimant's RFC reflects "the most [she] can still do [in a work setting] despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).

PROCEDURAL HISTORY

Osborne claims she has been disabled since June 24, 2005. R. at 159. In 2007, Osborne obtained SSI benefits based on a West Virginia ALJ's finding that she was disabled. Id. at 159-66. In February 2008, Osborne's benefits were terminated because she was convicted and incarcerated for shoplifting. Id. at 189.

After release from jail, where she had received treatment for her impairments, in May 2010, Osborne sought reinstatement of her SSI benefits. Id. at 104. On December 5, 2011, after holding a hearing and applying the five-step sequential analysis,[2] the ALJ concluded that Osborne had the following severe impairments: depression; anxiety disorder; and a history of opiate dependence. Id. at 106-7. The ALJ found that none of those impairments met or equaled the listed criteria for a per se finding of disability. Id. at 107. The ALJ also determined that Osborne had the RFC to perform her past relevant work as a fast food worker, id. at 110, and concluded Osborne was not disabled. Id. at 111. In making this determination, the ALJ did not obtain the file of the prior favorable decision, nor did he meaningfully address the prior claim. See id. at 118. The ALJ summarily discounted the prior claim without analysis. Id. at 104.

FACTUAL HISTORY

Osborne, 47 years old at the time of the ALJ decision, is a high school graduate who has previously worked as a cashier, waitress, dry cleaning press operator, and landscaper. Id. at 121,

---

[2] The ALJ considers whether a claimant: (1) is engaged in substantial gainful employment; (2) has one or more severe impairments, which significantly limit her ability to perform basic work; (3) has impairments that meet or equal the criteria associated with impairments in the Social Security Regulations so as to mandate a disability finding; (4) has a RFC to perform work with her limitations and can return to her previous work with that RFC; and (5) can perform any other work existing in the national economy. See 20 C.F.R. § 416.920(a)(4)(i)-(v).

249, 273.  She stopped working as a cashier in 2005 after injuring her neck and back in car accidents.[3]  Id. at 122.

Osborne contends her daily activities are limited by impaired breathing, migraines, constant pain in her neck, shoulder, and back, and depression, id. at 129, 131, 133-35, 140-42, and claims her mental health and breathing issues have deteriorated since the 2007 ALJ disability determination.  Id. at 128-29.  She constantly suffers from breathing problems and three or four days a month she is unable to leave the house due to the severity of her health problems.  Id. at 134-36.  She is afraid to go out in public and is confrontational with people, including her family and friends.  Id.

At the time of the hearing, Osborne's living situation was "up in the air" and she "hoped to get her own place."  Id. at 120.  Osborne's mother, who lived with her from May 2010 through September 2011, testified that her daughter has trouble walking up and down stairs and with grocery shopping because of breathing issues.  Id. at 145-46.   She described Osborne as short tempered and paranoid.  Id. at 147, 150.

Osborne's medical history includes:

**A.  Mental Impairments**

Osborne testified that as a child she was physically abused by her mother and sexually abused by her uncle.  Id. at 632.  She is "very preoccupied" with these childhood traumas.  Id. at 633.  Osborne was physically abused by an ex-boyfriend from 2001 to 2008.  Id. at 377.  In 1996, Osborne discovered that her husband was sleeping with their daughter's friend.  Id.  They have since gotten a divorce.  Id. at 390.  Osborne watched a woman beat her children and attacked the woman.  Id. at 391.

---

[3]     In 1996, Osborne was rear-ended by a tractor trailer and in 2003, she was hit, while walking, by a drunk driver.  R. at 162.

- Throughout 2007 Osborne was seen at the New River Health Association ("New River") in West Virginia. Id. at 629-46. Clinicians noted Osborne had anger issues, and once, had beaten up her grandson's stepfather. Id. at 106. Osborne did not have suicidal ideations, refused psychotropic medications, but stated that she was having increasing problems with her anger. Id. at 633. She complained she was "on edge all of the time, ha[d] rage and nightmares," and requested counseling. Id. at 632. Osborne had logical thoughts, fair insight and judgment, and poor attention and concentration. Id. at 630.

- In October 2007, Internist Dr. SanJay Mehta referred Osborne to the mental health department of New River for "anger issues." Id. at 632. The assessment/preliminary diagnosis stated Osborne suffered from depression, bipolar disorder,[4] and substance abuse. Id. at 633. Osborne reported an "increased preoccupation with physical abuse by her mother and childhood sexual abuse by her uncle." Id. at 632. She reported living with a violent alcoholic. Id. at 630.

- In June 2008, at Ches Penn Family Health Center, Osborne was diagnosed with depressive disorder. Id. at 364.

- In 2009, while incarcerated at the State Correctional Institution ("SCI") Muncy, Osborne was diagnosed with depression and bipolar disorder. Id. at 337, 341. She received routine psychiatric care and was prescribed Vistaril, and Zoloft. Id.. Beth Ann Baxter, a nurse practitioner, noted that meds improved Osborne's anxiety symptoms and depression, but she was still at risk. Id. at 340-41.

---

[4] Individuals with bipolar disorder experience alternating manic episodes, in which "there is an abnormally and persistently elevated, expansive, or irritable mood," and major depressive episodes, in which "there is either depressed mood or the loss of interest or pleasure in nearly all activities." DSM IV-TR 349, 357, 382.

4

- In June 2010, at Ches Penn Family Health Center Osborne was diagnosed with bipolar disorder.  Id. at 352.

- In July 2010, therapist Judie Riley diagnosed Osborne with major depression, anxiety, and a mood disorder.  Id. at 387.  Riley noted that although medication stabilized Osborne, she was still impulsive, depressed, anxious, and lacked self-control.  Id.  Riley recommended weekly outpatient psychiatric treatment.  Id. at 394.

- In July 2010, Dr. Aimal Khan, at Holocomb Behavioral System, performed a psychiatric evaluation and concluded Osborne was suffering from depression.  Id. at 376.  Osborne told Dr. Khan that she could not concentrate.  Id.  She had been taking Zoloft for her anxiety, depression, and intermittent panic attacks, but had run out.  Id.  She stated Zoloft helped to get rid of the black, heavy weight inside of her.  Id.  Dr. Khan recommended she continue taking Zoloft.  Id. at 378.

- In August 2010, Dr. Hoffman, who completed a psychiatric review and functional capacity assessment, stated the medical evidence established determinable impairments of major depressive disorder, moderate post-traumatic stress disorder ("PTSD"), anxiety disorder, and a history of opiate dependency.[5]  Id. at 421.  He opined Osborne could perform simple, routine, repetitive work in a stable environment and was able to carry out short and simple instructions.  Id.  Dr. Hoffman also concluded Osborne would not require special supervision, but may have difficulty interacting with the public, coworkers, supervisors and responding to changes and pressures at work.  Id.

---

[5]  Osborne alleges she has not abused illegal drugs or alcohol in ten years. R. at 123.  She testified that she had made a promise to her niece that she would stop and after her niece was killed, she followed through on that promise.  Id.

5

B. **Chronic Obstructive Pulmonary Disease ("COPD")**[6]

- In February 2006, Osborne was seen at Appalachian Healthcare, Inc. in West Virginia with complaints of a chest cold. Id. at 591. A chest x-ray was performed and revealed chronic obstructive pulmonary disease, but no active chest disease. Id. at 598. The report stated Osborne had been a smoker for 20 years. Id.

- In March 2007, at New River, Osborne reported burning in her chest. Id. at 641. Dr. Mehta noted asthmatic bronchitis. Id.

- In November 2007, at Raleigh General Hospital, Osborne was diagnosed with peripheral arterial disease and underwent an aortobifemoral arteriogram and an artery injection.[7] Id. at 583-86.

- In July 2008, Obsorne was seen at Chester County Pulmonary and Sleep Specialists ("Sleep Specialists") after an abnormal CT scan. Id. at 369. She reported a chronic cough with production of green sputum, heartburn and reflux, nasal congestion, postnasal drip, fever, and sweats. Id. Osborne was diagnosed with moderate COPD and the physician advised her to stop smoking. Id. at 370.

- In September 2008, at Ches Penn, Osborne was diagnosed with COPD. Id. at 357, 359. Osborne's chest, lung and cardiovascular exams revealed normal results. Id.

---

[6] COPD "is a progressive disease that makes it hard to breathe." See http://www.nhlbi.nih.gov/health/health-topics/topics/copd/ (last visited September 18, 2014). "COPD can cause coughing produces large amounts of mucus (a slimy substance), wheezing, shortness of breath, chest tightness, and other symptoms." Id. "Cigarette smoking is the leading cause of COPD." Id.

[7] Peripheral arterial disease is "a common circulatory problem in which narrowed arteries reduce blood flow to your limbs." See http://www.mayoclinic.org/diseases-conditions/peripheral-artery-disease/basics/definition/CON-20028731 (last visited 9/23/14). An aortobifemoral arteriogram is a radiograph of the aorta and both femoral arteries. Dorland's at 113, 143.

- In November 2008, at Chester County Pulmonary and Sleep Specialists, Osborne reported shortness of breath, chest tightness, and wheezing. Id. at 368. A review of her CT scan showed that there was no chest mass, just scarring, emphysema, and acute exacerbation of her COPD. Id.

- In November 2009, Osborne was diagnosed with COPD while at SCI Muncy. Id. at 341.

- In August 2010, at Sleep Specialists, Osborne reported her breathing had worsened, she had blood-tinged sputum at night, and she would wake up feeling frightened and unable to breath. Id. at 400. Her COPD had improved, but she continued to smoke cigarettes. Id.

- In August 2011, at Sleep Specialists, Osborne complained of coughing, sinus pressure, congestion, and shortness of breath. Id. at 527. She continued to smoke cigarettes. Id. Her physical exam revealed clear lungs, emphysema, and no fibrosis or masses in her chest. Id. Osborne was found to have COPD, allergies, and hemoptysis,[8] which was much improved. Id.

**C. Other Physical Impairments**

- In February 2006, Osborne was seen at Appalachian Healthcare for neck and back pain. Id. at 591.

- In September and November 2006, at Raleigh General Hospital in West Virginia, Osborne was seen for pain and numbness in her left arm, and neck pain radiating down her left arm. Id. at 589. An MRI was performed, and Dr. Richard Daniel, Jr. noted that degenerative joint disease pronounced on Osborne's left side, with some narrowing of the

---

[8] Hemoptysis is the expectoration or coughing up of blood or blood stained mucus. Dorland's at 842.

7

cervical disc space. Id. He also noted evidence of cervical spondylosis, but otherwise the study was unremarkable.[9] Id. Diagnostic images were normal. Id.

- In January 2007, Osborne was seen at New River for pain in her back and upper arm. Id. at 645. Dr. Mehta determined Osborne suffered from chronic neck pain and sinus inflammation. Id. at 645. In February 2007, Osborne had a significant pain in her neck, numbness of the left side of her face and neck, and migraines. Id. at 643. Dr. Mehta noted Osborne suffered from chronic back pain. Id. Her "problem list" consisted of cervical spondylosis with disc protrusion. Id. at 635, 639, 641, 643, 645.

- In a June 2007 status letter, Dr. Mehta stated Osborne had been under his care since May 2006, and had a history of chronic neck pain and headaches from her 1996 car accident. Id. at 638. He also noted she had developed numbness in her left arm. Id. Dr. Mehta noted that she had a work-related accident in 2004 and had seen a neurosurgeon at the time. Id. Dr. Mehta stated Osborne feared driving because of her increased neck pain, had trouble doing house work, and was unable to lift more than five pounds due to increased pain. Id. A 2006 MRI revealed tentative joint disease and evidence of cervical spondylosis. Id. Dr. Mehta concluded Osborne would not be able to successfully participate in the workforce. Id.

- In November 2007, at Appalachian Regional Healthcare, Osborne was seen for a severe headache. Id. at 622. She had a normal CT Scan. Id.

- In January 2008, Osborne slipped and fell down a set of steps while incarcerated. Id. at 656-66. She reported she could not move her legs, and complained of numbness in her left lower extremity, neck pain, and tingling in her right lower extremity. Id. Images of

---

[9] Spondylosis is "dissolution of a vertebra". Dorland's at 1754.

her spine and head were normal.  Id.  Tests also showed no traumatic injury to her abdomen or pelvis.  Id.  An MRI of her spine showed lumbar spondylosis, but no reason for her lower extremity weakness was found.  Id.  Dr. Pankaj H. Patel noted, "[g]iven the inconsistencies of her weakness, it was felt that there was a component of factitious or conversion disorder present in the patient."  Id.

- In June, September, and October of 2008, Osborne was seen at Ches Penn and reported chronic neck pain and headaches.  Id. at 355, 357, 359, 363.

- In July 2008, Osborne was seen at Jennersville Regional Hospital after being assaulted.  Id. at 553-57.  Dr. Samuel L. D'Amato noted there was no fracture in Osborne's spine, but there were degenerative changes at the lumbar spine and disc space narrowing at every level.  Id. at 555.  Facet arthropathy was severe on the left of her spine.[10]  Id. at 553.

- In September 2008, Osborne was seen at Ches Penn for low back pain with radiation to her legs.  Id.  357-59.  An exam of Osborne's spine revealed some tenderness and a positive right leg raise.[11]  Id. at 357, 359.  She was diagnosed with chronic pain.  Id.

- In 2009, at SCI Muncy, Osborne was diagnosed with migraine headaches, degenerative disc disease, Hepatitis C, and Raynaud's disease.[12]  Id. at 337, 341.

---

[10]   Facet Athropathy is a spinal joint disease, with disc degeneration and pain.  Dorland's at 158, 1344, 1754.

[11]   The straight-leg raising test, checks for lumbar radiculopathy by determining whether there is pain when "the symptomatic leg is lifted with the knee fully extended" between 30 and 90 degrees.  Dorland's at 1900.  "[T]he distribution of the pain indicat[es] the nerve root involved."  Id.

[12]   Hepatitis is "inflammation of the liver."  Dorland's at 844.  Hepatitis C is "a viral disease caused by the hepatitis C virus" that can follow parental drug abuse or other intimate person contact with an infected person.  Id. at 845.  Raynaud's disease consists of "symmetrical cyanosis of the extremities, with persistent, uneven blue or red discoloration of the skin of the

- In June 2010, Osborne was seen at Ches Penn for chronic neck pain and headaches. Id. at 353.

- In September 2010, at Jennersville Regional Hospital, Osborne complained of increasing neck pain and headaches. Id. at 532. Her x-ray showed no definite abnormalities. Id.

- In September 2010, Osborne was seen by Dr. Bree at Jefferson Regional Hospital and complained of neck, upper trunk, and arm pain, arthritis in her neck, headaches, difficulty turning her head, and a weak left leg. Id. at 442. Osborne stated that she could sit in one position for ten minutes and stand for five minutes and then has to change positions. Id. at 443. She stated that she could walk one block, but had to use a cane occasionally. Id. Osborne stated she could go up and down the stairs, could independently dress and undress, and perform housework. Id. Dr. Bree's impression was left-sided neck pain, and left leg and arm heaviness. Id. at 445. Dr. Bree determined Osborne had no limitations lifting, carrying, standing, walking, sitting, pushing, or pulling. Id. at 440-41. He noted that she had some environmental restrictions and should limit her exposure to dust, fumes, odors, gases, and humidity. Id. at 441.

- In September 2010, during a RFC Assessment, Dr. Vrajkal Papat found Osborne capable of: (a) occasional lifting or carrying of 50 pounds; (b) frequent lifting or carrying of 25 pounds; (c) standing or walking about six hours in an eight-hour workday; (d) sitting about six hours in an eight-hour work day; (e) unlimited pushing and pulling; (f) no postural limitation; (g) no manipulative limitations; (h) no visual limitations; and (i) no communicative limitations. Id. at 446-52. He also suggested Osborne avoid moderate exposure to fumes, odors, dusts, gases, and poor ventilation. Id.

---

digits, wrists, and ankles accompanied by profuse sweating and coldness of the digits." Dorland's at 19.

- In December 2010, at Albert Einstein Medical Center, Dr. Jasmeet Oberoi saw Osborne for her neck and shoulder pain, determined that no specialized care was needed, and suggested that Osborne continue her "current medical therapy." Id. at 667-73.

- In January 2011, at Jennersville Regional Hospital, an MRI of Osborne's spine revealed spondylosis, no cord compression or cord signal abnormality, and anatomic alignment of the cervical spine. Id. at 530. Evidence of a disk bulge was seen. Id.

DISCUSSION

A claimant is disabled if she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.905; see also Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 503 (3d Cir. 2009).  I must accept the ALJ's fact findings if supported by substantial evidence or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390 (1971); see also 42 U.S.C. § 405(g).  I may not weigh the evidence or substitute my own conclusions for those of the ALJ.  Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011).  However, with respect to the ALJ's legal conclusions and application of legal principles, id. at 667-73, I must conduct a "plenary review." Payton v. Barnhart, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006).  Thus, I can overturn an ALJ's decision for a legal error even if I find it was supported by substantial evidence.  Id.

A. ALJ's Review of Prior ALJ's Finding

Osborne contends the ALJ erred by failing to obtain and assess the records that supported her prior finding of disability.  Pl.'s Br. at 2-4.

"The ALJ has an affirmative duty to develop the record."  Wooten v. Astrue, No. 11-

7592, 2012 WL 6601397, at *4 (E.D. Pa. Dec. 17, 2012) (citing Sims v. Apfel, 530 U.S. 102, 111 (2000)).  This duty requires the ALJ to "explore all relevant facts and inquire into issues necessary for adequate development."  Kearney v. Astrue, 730 F. Supp. 2d 482, 484 (E.D. N.C. 2010) (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir.1986)).  "Evidence supporting a valid prior disability claim is relevant to a later claim."  Wooten, 2012 WL 6601397, at *4 (although a prior award of disability benefits is not dispositive, the records that supported that determination are relevant in determining current eligibility for benefits).  "How the claimant's condition changed, if at all, is relevant to assessing his current condition."  Id.  A case may be remanded "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits."  Wooten, 2012 WL 6601397, at *3 (citing Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

In his discussion of the facts, the ALJ stated Osborne "was previously approved for SSI benefits in a decision issued on August 21, 2007; however, those benefits were ceased in February 2008 after [Osborne] was arrested."  R. at 104. The ALJ did not further discuss or analyze the prior West Virginia ALJ decision, which had reached several different conclusions. For example, the West Virginia ALJ found Osborne had multiple severe impairments, including: "degenerative joint disease at C3-4 on the left side with some foraminal[13] narrowing and spondylosis, chronic neck pain syndrome, tension headaches secondary to neck pain, and depression."  R. at 161.  Osborne was deemed disabled and "restricted to work environments that limit social interactions."  Id. at 166.  The West Virginia ALJ also determined Osborne could not return to prior work as a cashier.  Id. at 165.  Here, however, the ALJ found Osborne had only three impairments: "depression; anxiety disorder, and a history of opiate dependence."  Id. at

---

[13]   Foramen is "a natural opening or passage, especially one into or through a bone." Dorland's at 729.

106. He also found Osborne able to work as a fast food worker. Id. at 110-11.

Although the ALJ was not bound by the prior ALJ's decision, it was relevant. See Wooten, 2012 WL 6601397; Kearney, 730 F. Supp. 2d 482. The ALJ was required to assess whether Osborne's previously disabling conditions had become better or worse, and explain why he determined Osborne could return to work as a cashier whereas the prior ALJ had found otherwise. [14] See Wooten, 2012 WL 6601397, at *4. The ALJ did not obtain nor assess the prior relevant decision, which was part of the record only because Osborne's counsel submitted it to the ALJ. R. at 118.

The Commissioner argues that Osborne "cites no regulatory authority or Third Circuit authority to support [her] argument." Def.'s Br. at 5. I disagree. See Wooten, 2012 WL 6601397. She also contends that Wooten, 2012 WL 6601397, placed a heightened standard on the ALJ to develop the record only if the Plaintiff is pro se. Id. at 5-6. The Commissioner's arguments are unavailing.

Although Wooten acknowledged that an ALJ's duty to develop the record is heightened when a claimant appears pro se, Wooten, 2012 WL 6601397, at *3, its rationale is not limited to that context. Wooten held that "although the prior award of disability benefits is not dispositive, the records that support that determination are relevant in determining current eligibility for benefits" and thus "because the ALJ did not obtain and consider the prior determination and its bases, we shall remand for purposes of developing the record by obtaining and evaluating the evidence that supported the prior disability determination." Id. at *1. This reasoning is not limited to a claimant's pro se status. An ALJ's duty to consider relevant evidence is more expansive. See Cotter v. Harris, 642 F.2d 700, 702 (3d Cir. 1981) (an ALJ has a duty to hear and

---

[14] Osborne also argues that this decision is erroneous because she developed Hepatitis C in 2009, which precluded her from working in the food service industry. Pl.'s Br. at 7; see also R. at 337 (Medical Release Summary stating "HCV+" and "0 food service.")

evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits). Regardless whether a claimant is represented, relevant prior evidence must be considered.

The Commissioner further argues Osborne has failed to show that her 2007 impairment remains disabling. Def.'s Br. at 5-6. Osborne, however, satisfied her burden. She provided evidence that she has continued to be diagnosed and treated for neck and shoulder pain, headaches, arthritis in her neck, difficulty turning her head, spondylosis, disc bulge, chronic pain, bipolar disorder, major depression, anxiety, and mood disorder. See R. at 353, 387, 442, 530, 532, 667-73. Those are the same conditions for which she was found disabled by the prior ALJ. See id. at 161.

Accordingly, the case should be remanded so that the ALJ can consider that earlier decision. See Wooten, 2012 WL 6601397.

B. Osborne's Additional Claims

Osborne also alleges the ALJ failed to adequately explain his finding that she had no exertional impairment and no environmental impairment, failed to adequately explain his assessment of Osborne's RFC, and improperly rejected Osborne's mother's testimony. See Pl.'s Br. at 4-13. Because I recommend Osborne's case be remanded for the ALJ's failure to obtain and assess the records that support her prior finding of disability, it is unnecessary to examine Osborne's additional claims. A remand may produce different results, making discussion of them moot. See Steinberger v. Barnhart, No. 04-383, 2005 WL 2077375, at *4 (E.D. Pa. Aug. 24, 2005).

Accordingly, I make the following:

# R E C O M M E N D A T I O N

AND NOW, on October 8, 2014, it is respectfully recommended that Osborne's request for review be GRANTED and the matter be REMANDED to the Commissioner for further review consistent with this Report and Recommendation.  The Commissioner may file objections to this Report and Recommendation within 14 days after being served with a copy thereof.  <u>See</u> Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.  <u>See</u> <u>Leyva v. Williams</u>, 504 F.3d 357, 364 (3d Cir. 2007).

BY THE COURT:

<u>/s/ Timothy R. Rice</u>
TIMOTHY R. RICE
US MAGISTRATE JUDGE